[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10814
Non-Argument Calendar

_____

D.C. Docket No. 4:08-cr-10031-JLK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEIVYS DELGADO SEDENO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 17, 2013)

Before TJOFLAT, PRYOR, and FAY, Circuit Judges.

PER CURIAM:

Deivys Delgado Sedeno appeals his convictions and sentences for conspiring

to encourage or induce aliens to come to the United States and for several counts of

encouraging or inducing aliens to come to the United States, in violation of 8

U.S.C. § 1324(a)(1)(A)(iv) and (v).  On appeal, Delgado Sedeno argues: (1) the

evidence was insufficient to support his convictions for encouraging or inducing

aliens to enter the United States; and (2) his 37-month sentence was procedurally

and substantively unreasonable.  For the reasons set forth below, we affirm

Delgado Sedeno's convictions and sentences.

I.

In May 2008, a federal grand jury returned an indictment, charging Delgado

Sedeno and Gavin James Rampersaud with conspiring to encourage or induce an

alien to enter the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), (v)

(Count 1) and twenty counts of knowingly encouraging or inducing aliens to enter

the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) (Counts 2-21).

At trial, Petty Officer Mathew Pittman, a second class boatswain with the

United States Coast Guard (the "Coast Guard"), testified that, from February to

July 2007, he was assigned to a vessel called the Coast Guard Cutter Drummond

(the "Drummond").  On May 19, 2007, while Officer Pittman was patrolling the

deck, the Drummond was located approximately sixteen miles off the coast of

Havana, Cuba.  During his patrol, Officer Pittman observed a "go fast vessel" at

8:20 a.m., and the Drummond made efforts to stop it.  In accordance with standard

operating procedures, the Drummond's crew attempted to hail the vessel using

2

"VHF radio marine, channel 16, an international hailing and distress frequency." The crew also activated the Drummond's law enforcement blue lights as well as its "loud hailer." After the crew attempted these communications, the go fast vessel did not stop immediately or respond to the Drummond. Approximately fifteen minutes after Officer Pittman initially observed the vessel, it came to a stop when a Coast Guard helicopter hovered over it. After the Drummond first attempted to hail the vessel, it "continued operating at a very high rate of speed" in a northbound direction, and the Drummond continued to pursue the vessel until it stopped. Subsequently, Officer Pittman observed approximately twenty people on board the vessel, and Coast Guard officers transported them to the Drummond. On cross-examination, Officer Pittman described the Drummond as 110 feet in length and white in color with "a big red Coast Guard stripe down the side of it."

Next, Petty Officer Christopher Taylor with the Coast Guard, who was also assigned to the Drummond on May 19, 2007, testified that he counted twenty-two people on board the go fast vessel, which he called "the Renegade," and he identified Delgado Sedeno as its operator. When Officer Taylor turned on the Renegade's VHF radio, it was tuned to Channel 16. The Renegade also had a "Garmin chart plotter," which is like a car's global positioning system ("GPS"), but, when Officer Taylor attempted to turn it on, the chart plotter had no power. He noticed two wires on the chart plotter had been disconnected, and, after he

3

reconnected the wires, the chart plotter worked. Officer Taylor determined that the Renegade did not have a sufficient number of life jackets for its passengers. On cross-examination, Officer Taylor testified that the Renegade did not have adequate "drinks" for twenty-two people, and it did not have any extra gasoline containers. On redirect, Officer Taylor confirmed he was able to drive the Renegade to Key West, Florida, without refueling. Officer Taylor discovered water and Gatorade on the Renegade and, although he believed there was also some food, he did not remember.

The parties stipulated to the names of the twenty individuals who were discovered on the Renegade, and the stipulation indicated they were all aliens without permission to enter the United States. At the close of the government's case, Delgado Sedeno moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the government failed to prove its case as to any count. Essentially, Delgado Sedeno argued that while the government proved that twenty migrants were on board his vessel, it did not prove why they were there.

After the government's response, the court denied Delgado Sedeno's Rule 29 motion, finding that the government had presented sufficient circumstantial evidence, which, if believed by the jury, would support a conviction.

The defense then presented Jennett Ramirez, a citizen of Cuba, who testified that, in May 2007, she organized a trip with fifteen or twenty other Cubans to come to the United States. After the group left Cuba, they spent two days at sea before their boat's engine broke. On the third day of their travels, the group was adrift at sea when they saw Delgado Sedeno's boat, and they began yelling and "making a lot of noise" to get his attention. Prior to this time, Ramirez had not met Delgado Sedeno, and she had no arrangement for him to bring her to the United States. Eventually, Delgado Sedeno allowed the Cuban migrants to board the Renegade, but he stated that he "was going to hand [them] over to the first boat he saw." Approximately a half hour later, they encountered the Coast Guard ship.

In rebuttal, the government again called Officer Taylor, who testified that when he discovered the Cuban migrants on the Renegade none of them had any medical issues or injuries, such as dehydration, sunburn, or sun poisoning. Further, none of them were sick to their stomach, and most of them were "somewhat dry."

At the close of the evidence, Delgado Sedeno renewed his Rule 29 motion, relying on the same arguments he had made in support of the initial motion. The district court denied the motion, finding that the jury must make credibility determinations regarding the witness testimony. Ultimately, the jury found Delgado Sedeno guilty of all twenty-one counts.

As to sentencing, the presentence investigation report ("PSI") calculated that, based on a total offense level of 20 and a criminal history category of II, Delgado Sedeno's guideline range was 37 to 46 months.  As to Count 1, Delgado Sedeno faced a statutory maximum sentence of ten years of imprisonment, and, as to Counts 2-21, he faced a statutory maximum sentence of five years of imprisonment.  The PSI also provided information regarding Delgado Sedeno's personal history and family background.  Among other things, the PSI noted that both of his parents died as a result of a car accident in 2003, when Delgado Sedeno was forty-four years old.  He reported having a good relationship with his parents before they died.  Moreover, Delgado Sedeno did not report that he experienced any abuse or trauma as a child.  The PSI noted that, in February 2009, Delgado Sedeno tested positive for cocaine, but, since that time, he had tested negative for drug use.  The PSI also noted that, on February 7, 2009, Delgado Sedeno was arrested for driving with a suspended license, and he failed to appear for a March 2009 hearing as to that charge.

At sentencing, the court noted Delgado Sedeno's applicable guideline range was 37 to 46 months.  Further, the court explained that it had considered two letters that were submitted on Delgado Sedeno's behalf, and it had carefully considered the PSI.  Delgado Sedeno then addressed the court personally, expressing remorse for his actions.  Subsequently, he moved for a downward variance from the

6

guideline range of one year and one day based on the 18 U.S.C. § 3553(a) factors. Delgado Sedeno noted that the PSI and the letters he submitted discussed the tragedies that he experienced in the past ten years, including the death of his parents in a traffic accident. He acknowledged that he did not appear for his original sentencing. However, he asserted that he was newly married with a young child, that he wanted to "turn things around and do things the right way," and that he was cooperating with the government.

> In imposing Delgado Sedeno's sentence, the court stated:

> The [c]ourt has considered the advisory guideline range and the Section 3553(a) factors and has concluded that a motion for a downward variance should be, and it is, denied.

> The [c]ourt has fashioned a sentence that is reasonable, individually tailored to the defendant, and sufficient, but not greater than deemed necessary, to comply with the purposes of sentencing.

The court imposed concurrent 37-month sentences as to each count.

## II.

We review challenges to the sufficiency of the evidence de novo, "viewing the evidence in the light most favorable to the government," resolving "any conflicts in favor of the government[,] and accept[ing] all reasonable inferences that tend to support the government's case." *United States v. Williams*, 527 F.3d 1235, 1244 (11th Cir. 2008). "We assume that the jury made all credibility choices in support of the verdict." *Id.* Further, we will affirm a conviction if "a reasonable

trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Id.* "A jury is free to choose among the constructions of the evidence," and the evidence need not "exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001).

To support a conviction under 8 U.S.C. § 1324(a)(1)(A)(iv), the government must prove beyond a reasonable doubt that the defendant "encouraged or induced an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence [was] or [would] be in violation of the law." *United States v. Lopez*, 590 F.3d 1238, 1248 (11th Cir. 2009) (alterations omitted). A defendant may encourage or induce an alien by "helping" the alien come to the United States. *See id.* at 1249-51 (rejecting a defendant's argument that the term "encourage" in § 1324(a)(1)(A)(iv) cannot mean "to help"). In *Lopez*, we concluded that, based on the evidence presented, the defendant "was more than a mere passive boat driver." *Id.* at 1252.

Viewing the evidence in a light most favorable to the government, there was sufficient evidence for a reasonable jury to find Delgado Sedeno guilty beyond a reasonable doubt of encouraging or inducing aliens to enter the United States. *See Williams*, 527 F.3d at 1244. Specifically, evidence showed that Delgado Sedeno was discovered only sixteen miles from the coast of Cuba traveling in a

8

northbound direction toward Florida in an attempt to transport twenty Cuban citizens to the United States in his boat. *See Lopez*, 590 F.3d at 1251. Moreover, he continued to travel at a high rate of speed in a northbound direction for approximately thirteen to fifteen minutes after Coast Guard officers, who were in a clearly marked white law enforcement vessel with a bright red stripe, ordered him to stop. After the Coast Guard attempted to hail the Renegade by using the VHF radio, blue law enforcement lights, and a loud hailer, Delgado Sedeno did not stop until a Coast Guard helicopter appeared. Moreover, when Officer Pittman boarded the Renegade, its VHF radio was tuned to Channel 16, which suggests that Delgado Sedeno heard and ignored the Coast Guard's initial stop order, which was broadcast over that channel.

Based on this evidence, a reasonable jury could have found that Delgado Sedeno knew or recklessly disregarded the fact that these Cuban citizens could not legally enter the United States because he initially attempted to elude law enforcement. *See Williams*, 527 F.3d at 1244; *see also* 8 U.S.C. § 1324(a)(1)(A)(iv). Further, the same evidence also suggested that Delgado Sedeno was "more than a mere passive boat driver." *See Lopez*, 590 F.3d at 1252. Although the government did not present evidence that Delgado Sedeno received financial compensation from the aliens, the circumstantial evidence was still sufficient to support a jury finding that he helped twenty Cuban citizens attempt to

9

enter the United States illegally by transporting them on his boat.  *See id.*  While the defendant in *Lopez* had received financial compensation to transport aliens on his boat, we did not explicitly hold in *Lopez* that financial compensation is required for a violation of § 1324(a)(1)(A)(iv).  *See id.* at 1249-52.

Finally, Delgado Sedeno argues that the evidence showed only that he attempted to rescue the Cuban migrants from a disabled boat.  Indeed, Delgado Sedeno presented testimony from Ramirez, one of the Cuban passengers, to support this defense.  However, the evidence need not "exclude every reasonable hypothesis of innocence," and, as discussed above, the evidence was sufficient to support Delgado Sedeno's convictions despite his theory of innocence.  *See McDowell*, 250 F.3d at 1354.  Contrary to Ramirez's testimony, other evidence suggested that Delgado Sedeno planned the trip in advance, rather than unexpectedly finding the Cubans adrift on a disabled raft.  Specifically, Delgado Sedeno's boat had more than enough fuel to travel from Cuba to the United States without refueling.  Additionally, although the Cuban migrants were allegedly at sea for three days on a raft before encountering the Renegade, none of the passengers showed signs of over exposure to the sun or dehydration and they were "somewhat dry."  Also, evidence that Delgado Sedeno had disconnected the Renegade's Garmin chart plotter was inconsistent with the defense's theory that he was attempting to rescue the migrants and transport them to safety.  Ultimately, the jury

10

was free to choose among the different constructions of the evidence, and we assume that the jury discredited Ramirez's testimony in favor of the evidence that supported the verdict. *See McDowell*, 250 F.3d at 1354; *Williams*, 527 F.3d at 1244.

### III.

Ordinarily, we review the reasonableness of a sentence under a deferential abuse of discretion standard of review. *Gall v. United States*, 552 U.S. 38, 51 (2007). When a defendant raises a sentencing challenge for the first time on appeal, we review only for plain error. *United States v. Aguillard*, 217 F.3d 1319, 1320 (11th Cir. 2000).

We utilize a two-step process in our review for reasonableness. *United States v. Turner*, 626 F.3d 566, 573 (11th Cir. 2010). We first examine whether the district court committed any significant procedural error and, second, whether the sentence is substantively reasonable under the totality of the circumstances. *Id.* The party challenging the sentence has the burden of establishing that the sentence was unreasonable based on the record and the factors set forth in § 3553(a). *Id.*

At the time of sentencing, the court must state its reasons for imposing a particular sentence. 18 U.S.C. § 3553(c). However, the court is not required "to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." *United States v. Scott*, 426 F.3d 1324,

1329 (11th Cir. 2005).

We review a sentence's substantive reasonableness by examining the totality of the circumstances, which includes an inquiry into whether the § 3553(a) factors support the sentence in question. *United States v. Gonzales*, 550 F.3d 1319, 1323-24 (11th Cir. 2008). The district court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. *See* 18 U.S.C. § 3553(a). Ordinarily, we expect a sentence within the guideline range to be reasonable. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). Moreover, a sentence imposed well below the statutory maximum is one indicator of a reasonable sentence. *See Gonzales*, 550 F.3d at 1324.

As an initial matter, the government argues that Delgado Sedeno's challenge to the procedural reasonableness of his sentence should be reviewed only for plain error because he failed to raise any procedural challenges in the district court. We have yet to decide in a published opinion whether plain error or abuse of discretion review applies to an unpreserved claim of a sentence's unreasonableness. Nevertheless, as discussed below, that issue need not be resolved in this case because Delgado Sedeno's procedural claim fails under either standard.

12

Delgado Sedeno's sentence is both procedurally and substantively reasonable. As to procedural reasonableness, the court properly calculated the guideline range, treated that range as advisory, and considered the information in the PSI as well as the § 3553(a) factors. Delgado Sedeno argues that the district court provided "no explanation" for his sentence. However, after hearing opposing arguments from the parties regarding Delgado Sedeno's request for a downward variance, the court explained its finding that a 37-month sentence was reasonable, individually tailored to Delgado Sedeno, and sufficient, but not greater than necessary to achieve the purposes of sentencing. The court explicitly stated that it had considered the § 3553(a) factors, and it was not required to discuss each of the factors individually. *See Scott*, 426 F.3d at 1329. Delgado Sedeno also suggests that the court failed to consider his "horrific childhood" following his parents' car accident. However, the district court explicitly stated that it had carefully considered the PSI, which detailed information about Delgado Sedeno's personal history and family background. Notably, although Delgado Sedeno suggests that his parents' car accident resulted in a difficult childhood, the PSI indicated that his parents died when he was forty-four years old and that he did not experience any abuse or trauma as a child. Regardless, the district court's rejection of Delgado Sedeno's arguments in support of a downward variance does not establish that the court ignored his arguments or any of the § 3553(a) factors.

13

Finally, Delgado Sedeno has not shown that his sentence is substantively unreasonable in light of the record and the § 3553(a) factors. *See Turner*, 626 F.3d at 573. Delgado Sedeno's 37-month sentence was imposed at the low end of the guideline range, and we ordinarily expect such a sentence to be reasonable. *See Talley*, 431 F.3d at 788. Moreover, his 37-month sentence was imposed well below the 10-year (120-month) and 5-year (60-month) statutory maximums for his offenses, further indicating that it was a reasonable sentence. *See Gonzales*, 550 F.3d at 1324. Additionally, Delgado Sedeno fled to Mexico after his conviction, which suggests that a sentence within the applicable guideline range was necessary to deter him from future criminal conduct and to promote respect for the law. *See* 18 U.S.C. § 3553(a). In sum, Delgado Sedeno's sentence is substantively reasonable because it was imposed at the low end of the applicable guideline range, it is well below the maximum sentence, and it serves the sentencing goals set forth in § 3553(a).

**AFFIRMED.**

14